Sliker *v.* Fisher.

---

NELSON SLIKER and JOSEPH HANCE, appellants,

*v.*

JAMES FISHER, assignee of John B. Fisher, respondent.

1. The commissions to be allowed to an assignee, on the settlement of his final account, should be such in amount as the court shall consider just and right, "with reference to the actual pains, trouble and risk in settling the estate, rather than in respect to the *quantum* of the estate."

Sliker *v*. Fisher.

2. As a general rule, commissions can only be allowed on the estate which the assignee has power to take and administer under his deed of assignment, but special circumstances may exist which would justify the court in awarding him compensation for raising money to pay mortgages on the lands assigned.

On appeal from decree of Warren county orphans court.

*Mr. William H. Morrow*, for the appellants.

*Mr. Henry S. Harris*, for the respondent.

THE VICE-ORDINARY.

This appeal brings up for review the decree made by the orphans court of the county of Warren in passing and allowing the final account of James Fisher, as assignee of John B. Fisher. Several errors are imputed to the decree. After full consideration, only two of them appear to me to possess sufficient substance to require special mention or discussion.

Two or more of the several tracts of land conveyed to the assignee were subject to mortgages. He sold them, with the consent of the mortgagees, free of the mortgages, and when the proceeds of sale were received, he applied them, so far as was necessary, to the payment of the mortgages, and in his account prayed allowance for such payments. The appellants excepted to the allowance of these payments. The orphans court, however, allowed them, and this allowance is one of the errors charged. Two arguments are advanced to show that the decree in this respect is erroneous: First, it is said, that the fact is that the lands were not sold free of the mortgages. The proofs, however, show that they were. The conditions of sale do not say whether they were to be sold subject to or free of the mortgages—they say nothing on the subject—but the assignee testified that an announcement was made to bidders that the lands would be sold free of the mortgages, and that the purchasers purchased with that understanding. That being so, the assignee was bound to pay the mortgages, and as the purchase-money he received represented the interest of the mortgagees in the lands, as well as that of his assignor, it was right, and not wrong, that he should apply so much of it

as was necessary to the payment of the mortgages. A refusal
to pay the mortgages, after having sold the lands on a repre-
sentation that they would be conveyed free, would have been a
fraud on the purchasers. Second, it is said, if it be true that
the lands were sold free of the mortgages, still, as the assignee
had no power under his deed to sell anything but his assignor's
equity of redemption, and as everything he received, over and
above the value of the equity of redemption, represented some-
thing belonging to the mortgagees, and not to his assignor, it is
obvious, that that part of the proceeds of sale, which he applied
to the payment of the mortgages constituted, no part of the as-
signed estate, and should not, therefore, have been included in his
account. The truth of this objection, in both its branches, may
be conceded, and yet nothing will be shown which will render
it either necessary or proper that the decree under review should
be reversed. Take it to be true, that the money paid to the
mortgagees constituted no part of the assigned estate, and, con-
sequently, that its receipt and disbursement should not appear
in an accounting of the assigned estate which is strictly accurate,
still it is clear, beyond dispute, that their inclusion in the account
in this case has done nobody any harm. The appellants have
been deprived of nothing, nor have they suffered injury or
prejudice of any kind. On the contrary, by the method of
accounting which the assignee adopted in this regard, the cred-
itors interested in the estate received much more complete and
satisfactory information, respecting the administration of the pro-
ceeds of sale of the real estate, than they would have received
had the assignee adopted the method of accounting which the
appellants say he should have adopted.

The appellants also say, that more commissions were allowed
to the assignee than should have been allowed. The statute
authorizes the orphans court to allow such commissions to an
assignee, on the settlement of his final account, as the court shall
consider just and right. *Rev. p. 40 § 18.* Although the statute
does not expressly say so, it manifestly means that the commis-
sions to be allowed shall be such in amount as the court shall
consider just and right " with reference to the actual pains,

trouble and risk in settling the estate, rather than in respect to the *quantum* of the estate." That is the rule which the statute declares the same court shall observe when it allows commissions to an executor or administrator. *Rev. p. 776* § *109.* The pains and trouble, or work and service required of an assignee, are of the same general character as those rendered by an administrator, with this advantage in favor of an assignee: his assignor can help him in almost every emergency that arises, while an administrator's intestate never can. As a general rule, I think it would be safe to say, that the labor and care required, and the difficulties to be encountered in settling the estate of a debtor who has made an assignment for the benefit of his creditors, are rarely as great as those which an administrator is required to give and to meet. A practice, however, prevails, very generally, I think, of allowing to assignees the maximum rates authorized by statute to be allowed to executors and administrators in cases where their receipts do not exceed $50,000. The orphans court evidently intended to follow this rule in allowing commissions in this case.

The decree in question allows the assignee commissions, on the whole of the estate with which he had charged himself, at the rates allowed by statute to executors and administrators. The sum which the court thus fixed as the basis for computing commissions is $14,707.32. The property assigned, however, amounted to less than $4,700, so that the sum which the court fixed as the basis for computing commissions, exceeded by over $10,000 the amount of the estate actually handled by the assignee, in virtue of his office as assignee. The method pursued to raise the estate to $14,707.32 was this: the assignee first charged himself with the whole amount of his inventory and appraisement, being the sum of $13,605.71. The personal property was appraised at $615.71, and the real estate at $12,990, making a total of $13,605.71. The real estate was appraised at what it was supposed to be worth, without regard to encumbrances and without deduction on that account. In addition to the amount of the inventory and appraisement ($13,605.71), the assignee charged himself with $1,101.61, representing rent, the

value of the products of the real estate, money collected and not appraised, and some other things not included in the inventory. The assignee sold the real estate for $3,600 less than it was appraised at, and prayed allowance for this difference, and allowance was made to him. So that the assignee's account in regard to this matter stands in this wise : he first charged himself with $3,600 which he had not received, and which, as a matter of fact, had never had an existence, and then asked to be credited with the same amount because he had not received it. The account in this respect is a pure fabrication, resting on nothing but an overestimate of the value of the real estate. Such estimate is entirely too unsubstantial to be made the basis of an allowance of commissions.

By the method of stating his account, which the assignee adopted in this case, he is allowed, it will be observed, to take commissions on that part of the proceeds of sale which represented the interest of the mortgagees in the lands sold. Their interest was not assigned, it constituted no part of the assigned estate, and the assignee had no power over it under his deed. Whatever he did in respect to it, was done, not as assignee, but as the agent of the mortgagees, and if he is entitled to any compensation for his services, the mortgagees must pay him. The money, which by law is distributable to the unsecured creditors of the assignor, cannot be used for that purpose. That can only be used in paying them and in paying the legitimate expenses of administering the assigned estate. But to avoid misapprehension, it is necessary to say, in this connection, that circumstances may exist which would make it entirely proper to award compensation to an assignee, out of the money distributable to creditors, for services rendered by him in raising money to pay mortgages on the lands assigned. Take this case for example : several tracts of land are assigned, each of which is subject to a mortgage much less in amount than the value of the land covered by it, and there is also a subsequent mortgage, covering all the tracts, less in amount, however, than the value of the equity of redemption in the several tracts, but the lands are of such character and so located that they cannot be sold with advantage as

Sliker *v.* Fisher.

a unit, but to bring their full value must be sold separately. Now, in that condition of affairs, the only means, other than judicial, by which the assignee could realize anything from the lands, for the unsecured creditors, would be by selling them free of the last mortgage, with consent of the mortgagee, under an arrangement that his mortgage should be paid out of the proceeds of sale. In that case, it would be entirely clear, that the services rendered by the assignee, in raising the money to pay the blanket mortgage, resulted in benefit to the unsecured creditors alone—indeed, that the assignee could not in any other way, except by judicial proceedings, realize anything from the lands for the unsecured creditors—and it would, therefore, be manifestly just and right that he should be paid for that service out the fund distributable to those who alone were benefited by it. But no such circumstances existed in this case. A very trifling sum over and above the encumbrances was realized from the sale of any of the lands which were subject to mortgage.

The decree in question allows commissions on an erroneous basis. It assumed that the estate assigned amounted to $14,707.32, when in truth it amounted to only $4,625.75. The latter is the sum on which commissions should have been allowed. I concur with the orphans court in the opinion that the assignee will be adequately compensated by allowing him the same rates which the statute allows to an executor or administrator.

The decree as to commissions must be reversed, and a decree entered awarding commissions on $4,625.75 at the maximum rates allowed by the statute to executors and administrators.